1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11   TERESA K. PALMER,                )    Case No. 11cv942-JLS (BLM)
                                       )
12               Plaintiff,            )    **REPORT AND RECOMMENDATION**
                                       )    **FOR ORDER GRANTING IN PART**
13   v.                                )    **PLAINTIFF'S MOTION FOR SUMMARY**
                                       )    **JUDGMENT AND DENYING**
14                                     )    **DEFENDANT'S CROSS-MOTION FOR**
     MICHAEL J. ASTRUE, Commissioner of )   **SUMMARY JUDGMENT**
15   Social Security,                  )
                                       )    [ECF Nos. 14 & 15]
16               Defendant.            )
                                       )
17   _____

18        Plaintiff Teresa K. Palmer brought this action for judicial review of the Social Security

19   Commissioner's ("Commissioner") denial of her claim for Disability and Disability Insurance

20   Benefits.  Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 14, "Pl.'s Mot.")

21   and Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for

22   Summary Judgment (ECF Nos. 15 & 16, "Def.'s Mot." & Def.'s Opp'n")[1].  Plaintiff did not file an

23   opposition or reply.

24        This Report and Recommendation is submitted to United States District Judge Janis L.

25   Sammartino pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States

26   District Court for the Southern District of California.  For the reasons set forth below, this Court

27   _____

28        [1]Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment
     appear on the docket as two documents, numbers 15 & 16.  However, the content of the documents is the same.
     For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot."

                                                                              11cv942-JLS (BLM)

**RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## PROCEDURAL BACKGROUND

On January 9, 2007, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning April 1, 2003. See Administrative Record ("AR") at 13. The claim initially was denied on May 4, 2007, and again upon reconsideration on July 23, 2007, resulting in Plaintiff's request for an administrative hearing on September 13, 2007. Id.

On July 27, 2009, a hearing was held before Administrative Law Judge ("ALJ") Jerry F. Muskrat. Id. at 24. Plaintiff, an impartial medical expert (John R. Morse, M.D.), and an impartial vocational expert (Mary E. Jesko) testified at the hearing. Id. at 13. In a written decision dated September 18, 2009, ALJ Muskrat determined that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act. Id. at 24. Plaintiff requested review by the Appeals Council and submitted additional evidence in support of her alleged disability. Id. at 1-4. In a letter dated March 3, 2011, the Appeals Council found no basis for reviewing the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1.

On May 2, 2011, Plaintiff filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On August 19, 2011, Plaintiff filed a motion for summary judgment alleging a single error: the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. See Pl.'s Mot. Defendant filed a timely cross-motion for summary judgment and opposition to Plaintiff's motion, asserting that the ALJ properly evaluated Plaintiff's testimony. See Def.'s Mot. Plaintiff did not file an opposition or reply.

## ALJ's DECISION

On September 18, 2009, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act. AR at 13-24. In reaching this decision, the ALJ followed the required five-step sequential evaluation process. Id. Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (April 1, 2003 to March 31, 2007). Id. at 13, 15. He then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in

the Regulations: "status post breast carcinoma, lymphedema of the right upper extremity, and discogenic disc disease of the lumbar spine." Id. at 15-16.  At step three, the ALJ agreed with the conclusion of all physicians and found that Plaintiff's impairments did not meet or medically equal the listed impairments.  Id. at 16.  At step four, the ALJ considered Plaintiff's severe impairments and determined that her residual functional capacity[2] ("RFC") permitted her to perform her prior work as a buyer.  Id. at 16-23.  In reaching this decision, the ALJ discounted Plaintiff's subjective claims of pain and other symptoms.  Id.  The ALJ summarized Plaintiff's subjective claims:

> The [Plaintiff] alleged disability due to lumbar spine injury and lymphedema of the right upper extremity.  The [Plaintiff] alleges her conditions cause limitations in standing, lifting, and manipulative activity (Exhibit 2E/2).  The [Plaintiff] testified that her right upper extremity swells up like a balloon and she needs to wear an upper extremity compression sleeve and glove for the rest of her life.  She stated that she is able to write for only ten minutes before she needs to stop due to pressure in the upper extremity.  The [Plaintiff] testified she has constant back pain and after standing for 20 minutes her back pain level is at the point where medication will not help reduce it.  She stated her back pain is only reduced when she lies, but the pain is constant.  The [Plaintiff] said that she does not like to take pills for her symptoms.  She testified she needs to lie down three hours in an eight hour workday, and can stand and walk combined two to three hours in an eight hour workday, but can only stand 20 minutes at one time.

Id. at 17.

Initially, the ALJ correctly stated that he was following a two-step process in evaluating Plaintiff's claimed pain and other symptoms: 1) is there a medically determinable physical impairment that could reasonably be expected to produce the pain and other symptoms, and if so, 2) is the alleged pain/symptom credible and does it limit the Plaintiff's ability to perform work activities.  Id.  In performing this process, the ALJ concluded that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Id.  The ALJ then discussed the facts supporting his conclusion.

---

[2] The ALJ determined that the Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and is further limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking about six hour (sic) in an eight hour workday, sitting about six hours in an eight hours (sic) workday, and can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, or crawl, but never climb ladders, ropes, scaffolds. The [Plaintiff] is capable of performing frequent handling and fingering with the right hand."  AR at 16-17.

Id. at 17-23.   The ALJ highlighted his determination that the objective medical evidence is inconsistent with Plaintiff's pain and symptom claims, that Plaintiff's treatment was conservative in nature, that there is no evidence indicating that Plaintiff's medication contributes to the pain or symptoms, and that Plaintiff was able to return to modified work on several occasions and almost complete a vocational course.   Id.

## APPLICABLE LAW

**A.     Standard of Review**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponder-ance."  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Batson, 359 F.3d at 1193.  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson, 359 F.3d at 1193.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social

1  Security Administration for further proceedings.  Id.

2  **B.    Subjective Symptoms**

3        The Ninth Circuit has established a two-part test for evaluating a claimant's subjective

4  symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ

5  must determine whether the claimant has presented objective medical evidence of an underlying

6  impairment which could reasonably be expected to produce the pain or other symptoms alleged."

7  Id. at 1036 (citation and internal quotation marks omitted).  The claimant, however, need not

8  prove that the impairment reasonably could be expected to produce the degree of pain alleged;

9  the claimant need only prove that the impairment reasonably could be expected to produce some

10 degree of pain or other symptom.  Id.  If the claimant satisfies the first element and there is no

11 evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the

12 severity of her symptoms ... by offering specific, clear and convincing reasons for doing so."  Id.

13 (citation and internal quotation marks omitted).  "General findings are insufficient; rather, the ALJ

14 must identify what testimony is not credible and what evidence undermines the claimant's

15 complaints."  Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

16 1995)).  The ALJ's findings must be "sufficiently specific to permit the court to conclude that the

17 ALJ did not arbitrarily discredit [Plaintiff's] testimony."  See Thomas v. Barnhart, 278 F.3d 947,

18 958 (9th Cir. 2002).

19       When weighing the claimant's testimony, "an ALJ may consider ... reputation for

20 truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

21 unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course

22 of treatment."  Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007).  An ALJ also may consider the

23 claimant's work record, daily activities, and testimony from doctors and third parties regarding

24 the "nature, severity, and effect of the symptoms" of which the claimant complains.  Thomas, 278

25 F.3d at 958-59; see also, 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial

26 evidence, the Court may not second-guess his or her decision.  Thomas, 278 F.3d at 959.

27                                    **DISCUSSION**

28       Plaintiff sole argument is that the ALJ improperly discounted her testimony regarding her

pain and physical symptoms and therefore improperly determined her RFC.  Pl.'s Mot. at 7-15.
Although Plaintiff never states which RFC findings she believes are incorrect, Plaintiff appears to
be objecting to the ALJ's determination that Plaintiff could stand, walk, or sit for six hours during
an eight-hour workday.  Id.; AR at 16-17.  This conclusion is contrary to Plaintiff's testimony that
she experiences significant back pain after 20 minutes of standing, that pain medication does not
help, and that during an eight-hour workday, she would need to lay down for a total of
approximately three hours and could alternate between sitting and standing for the remaining five
hours.  AR at 58-61.  Plaintiff also may be objecting to the ALJ's determination that she was
"capable of performing frequent handling and fingering with the right hand."  Pl.'s Mot. at 7-15.
This conclusion is inconsistent with Plaintiff's testimony that her lymphedema causes her right
arm, hand, and fingers to swell, that she has to wear a sleeve and glove on her right arm for the
rest of her life, that the sleeve and glove do not relieve the swelling, that she has to keep her
hand level with her heart, and that she can only do a little bit (perhaps 10 minutes per day) of
writing or typing and can't vacuum.  AR at 50-56.

        Both parties agree that the ALJ properly determined that Plaintiff has three legally severe
impairments: "status post breast carcinoma, lymphedema of the right upper extremity, and
discogenic disc disease of the lumbar spine."  Pl.'s Mot. at 7; Def.'s Mot. at 5; see also AR at 17.
The parties also agree that the ALJ properly determined that the symptoms claimed by Plaintiff
could reasonably be caused by Plaintiff's severe impairments.  Pl.'s Mot. at 9; Def.'s Mot. at 5; AR
at 17.  In addition, neither party alleges that the ALJ found that Plaintiff was malingering.[3]  As a
result, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's subjective claims
regarding her degree of pain and other symptoms.  See Lingenfelter, 504 F.3d at 1036.  Plaintiff
argues that the ALJ failed to comply with this mandate whereas Defendant asserts that he did.
Pl.'s Mot. at 7-15; Def.'s Mot. at 3-9.

        The ALJ identified a number of reasons for finding that Plaintiff's pain and symptom
testimony was not credible including that: (1) the objective medical evidence was inconsistent

---

        [3]The ALJ made no finding that Plaintiff was malingering, nor does the evidence suggest Plaintiff was doing
so.

with Plaintiff's testimony regarding her pain and other symptoms; (2) Plaintiff underwent conservative treatment for her lumbar spine; (3) Plaintiff lacked side effects from her medication; (4) Plaintiff was able to perform modified work duties and participate in vocational rehabilitation services. AR at 18-21. The Court will consider the validity of each stated reason separately.

**A.    Objective Medical Evidence**

The ALJ stated that the objective medical evidence was "fully consistent with the above residual functional capacity and inconsistent with the allegations of disabling levels of pain and symptoms." Id. at 18.

    1.    Discogenic Disc Disease of the Lumbar Spine

In determining that the objective evidence of Plaintiff's spine impairment was inconsistent with Plaintiff's claimed pain and disabling back symptoms, the ALJ analyzed all of the relevant medical records. Id at 18-23. In doing so, the ALJ highlighted the conclusions by Drs. Tung, Smith, Sabourin, Morse, Spellman, and Jacobs. Id. On August 11, 2003, Dr. Tung performed a neurosurgical consultation at the request of Plaintiff's treating physician. Id. at 335-340. Dr. Tung examined Plaintiff and considered her past medical care. Id. Plaintiff told Dr. Tung that she has "symptoms of low back pain, worse with activity" and she inquired about the possibility of surgery or artificial disc replacement. Id. Dr. Tung concluded that neither surgery nor disc replacement was a viable option for Plaintiff at the time. Id. at 338-39. Dr. Tung stated

> [a]t this time, I believe the most optimal treatment would be with continued medical supportive care and for [Plaintiff] to utilize a daily exercise program, medications, as well as judicious activity to try to live with her situation. She states she is presently completing a course of vocational rehabilitation and I am optimistic if she is able to find a position which does not have extensive physical require-ments, that she will be able to tolerate this. On the other hand, should [Plaintiff] have worsening and progressive symptoms, where she is unable to live with them, she could be a candidate for surgical treatment.

Id.

Dr. Smith treated Plaintiff from September 4, 2002 through at least February 23, 2004. See generally, AR at 328-397. During the initial examination, Dr. Smith noted that Plaintiff complained of "persistent back and leg pain," which is "worse with any repetitive bending or lifting activities." Id. at 392. Dr. Smith determined that Plaintiff had "[h]erniated discs L4-5 and L5-S1

secondary to lifting injury while on work duty, July 30, 2002" and recommended epidural cortisone injections to the lumbar spine, an oral corticosteroid preparation, analgesic and muscle relaxant medications, physical therapy, and a modified work duty. Id. at 393. On January 20, 2003, Dr. Smith re-examined Plaintiff and noted that Plaintiff had received three cortisone injections and received "no relief of her symptomatology." Id. at 379. Dr. Smith stated that Plaintiff was "to remain on modified duty consisting of a 10 pound lifting restriction, no repetitive bending or stooping and a 5 minute rest break every half hour." Id. On July 7, 2003, Dr. Smith re-examined Plaintiff and confirmed that she "is to remain on total temporary disability." Id. at 350. On July 30, 2003, Dr. Smith re-evaluated Plaintiff, reached the same disability conclusion, and referred her to Dr. Tung. Id. at 348. On August 25, 2003, Dr. Smith examined Plaintiff, confirmed the diagnoses of herniated discs and "degenerative bone and disc disease lumbar spine" and concluded that she "should be considered permanent and stationary for rating purposes." Id. at 333. Dr. Smith opined that Plaintiff "would reasonably have a work restriction of no very heavy work, contemplating that she has lost approximately one-quarter of her pre-injury capacity for bending, stooping, lifting, pushing, pulling, climbing and performing other activities of comparable physical effort" and "future medical care would consist of intermittent over-the-counter non-steroidal anti-inflammatory medications on an as needed basis." Id. at 333-34. Dr. Smith examined Plaintiff on December 15, 2003 and February 23, 2004 after Plaintiff experienced "a flare up of pain in her lumbar spine area" and Dr. Smith prescribed medication and acupuncture and found Plaintiff's condition still to be "permanent and stationary." Id. at 328-330.

On April 23, 2007, Plaintiff had an orthopedic consultation performed by Dr. Thomas J. Sabourin at the request of the Department of Social Services Disability & Adult Programs. Id. at 434-38. After the examination, Dr. Sabourin found that Plaintiff's shoulders, elbows, wrists, hands, fingers, hips, and knees had a range of motion that was "grossly normal and painless." Id. at 436. Dr. Sabourin found "chronic lumbar strain and sprain" and "right arm lymphedema, mild" and opined that Plaintiff

> could lift and carry 20 lbs occasionally and 10 lbs frequently. She could stand or walk up to six hours of an eight-hour workday and sit for six hours of an eight-hour workday. Push and pull limitations would be 50 pounds occasionally and 25 pounds frequently. [Plaintiff] could climb, stoop, kneel, or crouch occasionally. Due to her

1  problems with the right arm, she has some manipulative limitations.  She could work with gross manipulation with the right arm only occasionally.

2  Id. at 437.

3  Dr. Morse did not examine Plaintiff; he reviewed Plaintiff's medical records and testified as

4  an expert during the administrative hearing.  AR at 62-69.  Dr. Morse testified that Plaintiff had

5  severe impairments that limited her ability to work.  Dr. Morse detailed the applicable work

6  limitations, which included that Plaintiff could only stand, sit, and/or walk six hours of an eight-

7  hour workday.  Id.  Drs. G. G. Spellman and R.J. Jacobs reached the same conclusion.  Id. at 441-

8  44, 456-57.  The ALJ adopted the limitations described by these doctors in setting Plaintiff's RFC.

9  Id. at 21.

10  The Court's review of the cited medical records establishes that there is evidence in the

11  record supporting the ALJ's determination that Plaintiff's subjective symptoms and pain are not

12  consistent with the objective medical evidence.  While the absence of objective medical evidence

13  to support plaintiff's subjective complaints is a factor an ALJ can consider in discrediting symptom

14  testimony, it cannot be the sole factor.  See Reddick, 157 F.3d at 722 (citing Bunnell, 947 F.2d

15  341, 343 (9th Cir. 1991)[4].   Thus, this reason is not sufficient unless there is at least one other

16  reason for rejecting Plaintiff's subjective symptoms.

17  2.   Status Post Breast Cancer and Lymphedema of the Right Upper Extremity

18  With regard to Plaintiff's breast cancer, the ALJ relied on Plaintiff's treating doctor's

19  conclusion that Plaintiff was in remission during the relevant time period and doing well.  AR at

20  18.  With regard to the lymphedema, the ALJ found that "the record does not support the

21  claimant's testimony of significant right upper extremity swelling or lymphedema that is disabling"

22  because the swelling and lymphedema is controlled with the use of the gauntlet and sleeve.  Id.

23

24  [4] See also Stuter v. Astrue, 2009 WL 2824740, *6 (E.D.Cal. Sept. 1, 2009) (stating that "the asserted lack of objective medical evidence in support of plaintiff's subjective symptom testimony is not an acceptable reason, much

25  less a convincing reason, for rejecting plaintiff's subjective testimony. Reliance on such a reason is inconsistent with the principle that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not

26  discredit the claimant's testimony regarding subjective symptoms merely because the severity of the symptoms is not supported by objective medical evidence"); Mossett v. Astrue, 2008 WL 2783177, *4 (C.D.Cal., July 17, 2008) (citing

27  Bunnell, 947 F.2d at 346-347 (an ALJ may not discredit a claimant's testimony and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence)); and Robbins

28  v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)(stating that "while an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence") (citing SSR 96-7p and Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

1   at 18-19.  In support, the ALJ highlighted a June 1, 2005 note from Dr. Wallach stating that "right

2   arm lymphedema is controlled with a sleeve and is less uncomfortable" and a January 2, 2007

3   report from Dr. Wallach's nurse practitioner, stating that Plaintiff "continues to experience

4   significant right arm and hand lymphedema, which has improved with physical therapy and

5   utilization of compression sleeve and gauntlet." Id. at 19-20.

6        When evaluating the intensity and persistence of a plaintiff's symptoms, the ALJ may

7   consider a broad range of factors including the effectiveness of any medication or treatment in

8   controlling the symptoms.  See Furne v. Astrue, 2011 WL 3704265, *3 (D.Ariz. Aug. 24, 2011).

9   When an impairment "can be controlled effectively with medication," the impairment cannot be

10  considered disabling. Pharris v. Astrue, 2011 WL 3882508, *10 (E.D.Cal. Sept. 2, 2011) (quoting

11  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)).  Here, the treatment

12  Plaintiff received (the gauntlet and sleeve) and its effectiveness were valid considerations by the

13  ALJ in considering Plaintiff's subjective symptom testimony.

14       The Court's review of Dr. Wallach's medical records confirms the statements and medical

15  evidence upon which the ALJ relied.  AR at 402 & 482.  However, there also is evidence in the

16  record that contradicts the ALJ's determination and indicates that Plaintiff's lymphedema was not

17  controlled effectively with treatment.  For example, in a June 28, 2004 report, Dr. Wallach stated

18  that Plaintiff reported "persistent right arm swelling despite limb elevation and gauntlet use" and

19  on February 1, 2006, Dr. Wallach stated that Plaintiff reported "further right arm swelling due to

20  lymphedema" Id. at 401 & 404.  Additionally, on September 17, 2007, Dr. Wallach completed a

21  Lymphedema Medical Assessment Form and indicated that Plaintiff had moderate "chronic upper

22  extremity edema" and "chronic pain" and on December 18, 2008, Dr. Wallach indicated that

23  Plaintiff reported that her "chronic right arm treatment-related lymphedema is unchanged,

24  associated with pain and fine motor restriction." Id. at 465 & 490.

25       Where, as here, there is contradictory evidence, the Court must defer to the ALJ's

26  credibility determination when it is supported by substantial evidence.  See Lewis, 236 F.3d at

27  509.  As the court stated in Wafer v. Sullivan, 1994 WL 141649, *8 (N.D.Cal. April 13, 1994), "it

28  may well be that a different judge, evaluating the same evidence, would have found [plaintiff's]

allegations of disabling pain credible. But, ... in nearly every case where [the Court is] called upon to review a denial of benefits, [the Court is] not [the] trier[ ] of fact.  Credibility determinations are the province of the ALJ.  If the ALJ has made specific findings justifying his decision to disbelieve the claimant's allegation of debilitating pain, and those findings are supported by substantial evidence in the record, the Court's role is not to second guess the ALJ's decision." (quoting Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).  The Court's review of the record reveals that there is substantial evidence supporting the ALJ's determination that Plaintiff's lymphedema is controlled by the treatment and is not disabling and, therefore, the Court must defer to that determination and uphold the decision.

**B.   Conservative Treatment**

The ALJ found that another reason for discounting Plaintiff's pain and limiting symptom testimony was that Plaintiff employed conservative treatment for her lumbar spine which was "not the type [of treatment] one would expect from a disabling condition."  AR at 20.

An ALJ is permitted to consider the nature of Plaintiff's treatment in his assessment of Plaintiff's credibility.  See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); see also Tommasetti, 533 F.3d 1035, 1039 (9th Cir. 2008) (stating that the ALJ's finding that plaintiff's favorable response to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset undermined plaintiff's reports regarding the disabling nature of his pain was permissible); and Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received).  Here, however, the ALJ's finding that Plaintiff's care was too conservative for a disabling condition is not supported by substantial evidence.

In Clarke v. Astrue, 2010 WL 1540022 (D.Ariz. March 31, 2010), the district court found that the ALJ failed to provide clear and convincing reasons for discounting the plaintiff's pain testimony because the ALJ did not explain how the conservative treatment Plaintiff received for

his low back pain supported the ALJ's finding that Plaintiff was not credible. Id. at *15.  The court explained that plaintiff regularly attended a pain clinic and was treated with methadone, therapeutic exercises, electric stimulation therapy, and received injections, and that there was "no indication from any of the treatment records that more aggressive treatment was foregone in favor of conservative treatment because the pain was not yet severe or disabling enough." Id. The Court noted that plaintiff's physical therapist recommended conservative treatment to manage her symptoms and that later reports from plaintiff's doctor "suggest that more aggressive treatment, i.e., surgery, was not recommended because imaging studies did not reveal significant stenosis or disc degeneration," and because Plaintiff's doctor believed Plaintiff had a sacroiliac dysfunction that would benefit most from conservative treatments, including physical therapy and injections.  Id.  In finding that the ALJ's reasons for discrediting Plaintiff's subjective symptom testimony were not based on substantial evidence in the record, the court stated that "the ALJ concluded that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms. To then rely on the level of treatment to question Plaintiff's credibility concerning the intensity, persistence and limiting effects of these symptoms, when there is no indication from the treating physicians that if Plaintiff's symptoms were worse that surgery would be warranted, does not amount to any more than a back door finding that Plaintiff's statements are not fully corroborated by objective medical evidence." Id. at 16.

Here, the record reflects that Plaintiff's treatment for her back pain included medication, physical therapy, epidural steroid injections, and acupuncture.  AR at 357, 434, and 338.  As in Clarke, there was "no indication from any of the treatment records that more aggressive treatment was foregone in favor of conservative treatment because the pain was not yet severe or disabling enough." Clarke, 2010 WL 1540022 at *15.  In fact, Plaintiff expressed an interest in surgical treatment options in April 2003 because "her pain is debilitating," but Dr. Raiszadeh told her that surgery would not improve her axial back pain.  AR at 359.  Similarly, in August 2003, Plaintiff sought surgical care from Dr. Tung but was advised that her surgical options were "limited" and "variable."  Id. at 338-39.  Dr. Tung stated that he did not recommend surgery unless Plaintiff's symptoms worsened such that "she is unable to live with them." Id.  Dr. Tung

1   told Plaintiff that "the most optimal treatment would be with continued medical supportive care

2   and for Teresa to utilize a daily exercise program, medications, as well as judicious activity to try

3   to live with her situation." Id. at 338.

4        As in Clarke, the fact that Plaintiff's doctors do not believe that surgery will improve her

5   condition, does not mean that Plaintiff is not in pain or that she does not have a disabling

6   condition.  Because Plaintiff has a good medical reason for not undergoing more aggressive

7   treatment, the ALJ cannot use the conservative treatment as a basis for not finding Plaintiff to be

8   credible.  See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (stating

9   that "although a conservative course of treatment can undermine allegations of debilitating pain,

10  such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a

11  good reason for not seeking more aggressive treatment" and finding plaintiff's desire to take a

12  more aggressive treatment, but inability to do so due to a lack of insurance coverage to be a good

13  reason).  Plaintiff's conservative treatment is therefore, not a clear and convincing basis for the

14  ALJ's negative credibility determination.

15  **C.    Side Effects of Medication**

16       In reaching his credibility determination, the ALJ also relied on the fact that "the record

17  does not contain evidence that the claimant's medications caused adverse side effects that would

18  preclude sustained work activity."  AR at 20.

19       Typically, an "ALJ may consider the lack of side effects from prescribed medications in

20  weighing credibility." Mossett, 2008 WL 2783177 at *5 (citing Orteza v. Shalala, 50 F.3d 748, 750

21  (9th Cir. 1995) (stating that "[a]n ALJ is clearly allowed to consider the ability to perform

22  household chores, the lack of side effects from prescribed medications, and the unexplained

23  absence of treatment for excessive pain," as well as the presentation of conflicting information

24  about drug use)).  Here, however, Plaintiff's lack of side effects from her medication is not a

25  sufficient basis for discounting her symptom testimony.

26       In Mosset, the court found that "the absence of medication side effects is immaterial to the

27  ALJ's credibility determination in this case" because the plaintiff did not allege that he was

28  impaired due to the side effects of his medication.  Id. at *5.  The plaintiff did not testify about

the side effects of his medication, allege that he was unable to work due to his medication, or report any disabling side effects from his medication to any physician. Id. Instead, the plaintiff testified that he needed to stay off of his feet to avoid foot pain and swelling. As a result, the court found that "the lack of medication side effects is irrelevant to the credibility analysis in this instance, and does not constitute a clear and convincing reason to discount plaintiff's subjective testimony, as it has no bearing whatsoever on plaintiff's alleged inability to sustain substantial gainful activity." Id.

Similarly, in the instant matter, Plaintiff has not alleged that she is impaired due to the side effects of her medication. Plaintiff did not testify about the side effects of her medication or claim that she was unable to work due to the side effects of her medication. AR at 25-79. The ALJ fails to address how Plaintiff's lack of side effects from her medication impacts her credibility other than to say that it is "inconsistent with limitations that would preclude sustained work activity and is consistent with an ability to do a wide range of light work activity." Id. at 20. As such, the ALJ's finding that Plaintiff's medication did not cause adverse side effects that would preclude work activity is not relevant to his credibility determination and does not constitute a clear and convincing reason to discount plaintiff's subjective testimony. See Manzo v. Astrue, 2011 WL 3962254, *8 (C.D.Cal. Sept. 7, 2011) (finding that the ALJ failed to state clear and convincing reasons for rejecting plaintiff's testimony and stating "it is not clear why the ALJ referred to the lack of side effects of Plaintiff's medications, or how the lack of side effects reflected poorly on Plaintiff's credibility. Plaintiff was prescribed pain medication by his physicians, but Plaintiff did not complain of any side effects due to the medication"); see also Clarke, 2010 WL 1540022 at *16 (finding that ALJ did not explain how the management by plaintiff's treating physicians of his medications to alleviate the side effects rendered plaintiff's testimony not credible where the only other factor the ALJ mentioned in his credibility determination was that there were no reported side effects of medication that were not managed by adjustments in medication).

**D.    Work and Vocational Rehabilitation**

The ALJ also based his credibility findings on the fact that "the records show that during the period of adjudication the claimant was determined on several occasions to be capable of

returning to modified work" and "on August 11, 2003, it was reported that the claimant was participating in vocational rehabilitation services and was close to completing her vocational course." Id. at 20.  While the submitted medical records support the ALJ's statements that Plaintiff was determined to be capable of returning to work and was close to completing a vocational course (id. at 277-82, 293, 333, & 338), the law does not permit the ALJ's resulting conclusion.

In McCorduck v. Astrue, 2009 WL 783354 (D.Or., March 24, 2009), the ALJ concluded that Plaintiff was not credible due in part to the fact that Plaintiff participated in a sheltered environment work program.  Id. at *5.  The district court found that "the ALJ's inference that McCorduck was not credible because of her work attempts and applications for assistance is inappropriate."  Id.  In reaching this decision, the court noted that "an ALJ may not chastise a claimant for attempting to work in spite of her impairments; such activity supports rather than detracts from the claimant's credibility."  Id. (citing Lingenfelter, 504 F.3d 1028 (stating that "it does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, failed, that he did not experience pain and limitations severe enough to prevent him from maintaining substantial gainful employment.").

Similar to McCorduck and Lingenfelter, the ALJ may not penalize Plaintiff for participating in vocational rehabilitation and attempting to work in spite of her impairments.  The record does not indicate that Plaintiff did not experience pain or her other stated limitations during her rehabilitation or work efforts or that the performance of them proved that her pain and other limitations did not exist.  All the record establishes is that Plaintiff participated in a fifteen week long vocational program in 2005 that taught her basic computer skills and that she started a vocational rehabilitation course.[5]  AR at 20, 34-36 & 338.  Similarly, the record indicates that Plaintiff was determined to be capable of returning to modified work on several limited occasions but two of the reports state that "if modified duty is not available, employee to be on TTD until next appointment."  Id. at 277-82 &293.  The ALJ also noted that Plaintiff was terminated from

---

[5]The record does not indicate the type of vocation rehabilitation program Plaintiff was taking, nor whether she successfully completed it.  The record also does not address whether Plaintiff experienced the pain and other claimed spine symptoms during the computer vocational training.

her job because her accommodations could no longer be met.  Id. at 20-21 & 213. Plaintiff's unsuccessful attempts to work and rehabilitate do not qualify as a clear and convincing reason for rejecting Plaintiff's symptom testimony.[6]

**E.    Summary**

As set forth above, the ALJ provided a clear and convincing reason for rejecting Plaintiff's testimony regarding the limitations associated with her lymphedema and there is substantial evidence supporting the reason.  The reason–the effectiveness of utilized treatment–is a sufficient basis to discount Plaintiff's testimony.   However, the ALJ only provided one clear and convincing reason for rejecting Plaintiff's testimony regarding her back limitations-the claimed limitations were not consistent with the objective medical evidence.  While this finding is supported by substantial evidence, it is not a sufficient basis by itself to reject Plaintiff's subjective claims. Because the other reasons asserted by the ALJ are not supported by substantial evidence, they do not constitute sufficient reasons for discounting Plaintiff's symptomology testimony.  As a result, the ALJ has not provided sufficient reasons to discount Plaintiff's pain and symptomology testimony as it relates to her spine impairment.

**F.    Remand v. Reversal**

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barhart, 379 F.3d 587, 593 (9th Cir. 2004).  On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits."  Id.  "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be

---

[6]While the ALJ asserts that this is another reason to reject Plaintiff's symptomology testimony, it appears to be another way to state that the objective medical testimony does not support Plaintiff's claimed symptoms.  That is, the ALJ indicates that because the doctors felt that Plaintiff could return to work or should participate in rehabilitation, the fact that Plaintiff was unsuccessful in doing so (allegedly due to her pain and other symptoms), Plaintiff's claimed pain and other symptoms must be exaggerated.

resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." <u>Id.</u> (citing <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000), <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002), and <u>Smolen</u>, 80 F.3d at 1292). The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. <u>See</u> <u>Vasquez v. Astrue</u>, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit but declining to resolve the conflict); <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'"); <u>Shifts v. Astrue</u>, 400 Fed. Apex. 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits *only if* [the <u>Smolen</u> test is satisfied]").

Here, the record is not fully developed such that further administrative proceedings would serve no purpose and it is not clear from the record that the ALJ would be required to find the claimant disabled. While the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony regarding her back pain and other symptoms related to her back impairment, it is not clear from the record that there are no additional reasons. As set forth above, the ALJ stated one clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony: the stated limitations conflicted with the objective medical evidence. However, the ALJ failed to adequately support his other reasons and the one reason is legally insufficient to reject Plaintiff's testimony. However, there are other reasons, such as Plaintiff's vocational training and vocational rehabilitation efforts that were not adequately explored or explained. In addition, the ALJ provided adequate reasons, supported by substantial evidence for rejecting Plaintiff's testimony regarding her stated limitations arising out of her lymphedema. The record does not adequately indicate what work, if any, Plaintiff could perform with the claimed back limitations but without the claimed lymphedema limitations. Accordingly, the Court recommends that the case be remanded for further proceedings consistent with this report and recommendation, not for the award of benefits.

///

///

## CONCLUSION

For the reasons set forth above, this Court finds that the ALJ committed legal error when he rejected Plaintiff's testimony regarding her symptoms suffered as a result of her discogenic disc disease of the lumbar spine without providing clear and convincing reasons for doing so. Accordingly, this Court **RECOMMENDS** that Defendant's cross-motion for summary judgment be **DENIED** and Plaintiff's motion for summary judgment be **GRANTED IN PART** and that this case be **REMANDED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than March 7, 2012**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than March 21, 2012**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 22, 2012

BARBARA L. MAJOR
United States Magistrate Judge